**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BENJAMIN GREEN, | ) CASE NO. 4:20-cv-00555 |
| Petitioner, | ) JUDGE SOLOMON OLIVER, JR. |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| JEFF NOBLE, Warden, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

Petitioner, Benjamin Green (hereinafter "Petitioner" or "Green"), challenges the constitutionality of his conviction in the case of *State v. Green*, Trumbull County Court of Common Pleas Case No. 2000-CR-00574. Petitioner, represented by counsel David L. Engler, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 13, 2020.[1] (R. 1). On June 30, 2020, Warden Tom Schweitzer ("Respondent")[2] filed a Motion to Dismiss

---

[1] The Sixth Circuit, in agreement with the majority of circuits, has held that the prison mailbox rule does not apply where a prisoner is represented by counsel, as the "rule was created to prevent *pro se* prisoners from being penalized by any delays in filing caused by the prison mail system. But if a prisoner does not need to use the prison mail system, and instead relies on counsel to file a pleading on his or her behalf, the prison is no longer responsible for any delays …." *Cretacci v. Call*, 2021 WL 610166, 2021 U.S. App. LEXIS 4493 at *13 (6th Cir. Feb. 17, 2021).

[2] Respondent asserts that Tom Schweitzer is the current Warden of the Madison Correctional Institution and, as such, is the proper party Respondent. (R. 6, PageID# 45, citing *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2004) (as a general rule, a petitioner should name as a respondent to his habeas corpus petition the individual having day-to-day control over the facility in which petitioner is being detained)).

the petition as time-barred. (R. 6). Respondent also argued that the petition should be dismissed as unexhausted.[3] *Id*. Petitioner, through counsel, filed a brief opposing dismissal, on September 1, 2020. (R. 8). Respondent filed a reply in support of the motion to dismiss, on September 15, 2020. (R. 10). On November 23, 2020, this matter was reassigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DISMISSED as time-barred.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") As stated below, Petitioner never filed a direct appeal. In addressing an appeal from a denial of a motion to withdraw guilty plea filed over sixteen years later, the Eleventh District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Petitioner's guilty plea and conviction as follows:

> {¶5} On August 28, 2000, Mr. John Williamson was shot and killed near the intersection of Austin Avenue and Oak Street, Warren, Ohio, while riding his bicycle. He was 18 years old at the time of his death, 4"3' in height, and weighed approximately 97 pounds.
>
> {¶6} Police detained Green, who was fleeing from the direction of the crime shortly after the shooting, in a nearby church parking lot. He was subsequently brought into the Warren Police Department for questioning. Det. Sgt. Al Bansky and Det. Jeff Hoolihan are the detectives that met with Green in an interrogation

---

[3] When presented with a motion to dismiss on the grounds that claims are unexhausted or procedurally defaulted, this court may deny such motion without prejudice and further instruct the respondent to brief the merits of the petition as well. However, as the court recommends dismissal on statute of limitations grounds as explained below, Respondent's exhaustion argument will not be addressed in the interests of judicial economy.

2

room at the Warren Police Department. Green was 16 years old at the time of the interrogation.

{¶7} Before beginning the interrogation, Green was presented with a Warren Police Department waiver of rights form. Green was read the rights form by Det. Sgt. Bansky, he read the form back to the detectives, and he signed it as witnessed by the detectives. The transcript of Green's interview, Green's written statement, and the findings of fact and conclusions of law in the judgment entry denying Green's motion to suppress, indicate that Green knowingly and willingly waived his rights either orally or in writing—including his right to counsel—no less than three times in less than two hours.

{¶8} Neither detective was in uniform during the interrogation. Green stated repeatedly that he was comfortable, willing to talk to the detectives on camera, and understood that he could stop talking and request an attorney at any time. Green was permitted to take multiple breaks during the interrogation. Green stated multiple times that he understood his rights and that he had not been threatened, intimidated, or promised anything in exchange for his willingness to talk with detectives.

{¶9} During the interrogation, Green gave a detailed oral and written description of the events that occurred on August 28, 2000, which led to the death of Mr. Williamson. Green encountered the victim while walking down the street where the murder occurred. Initially suspecting that the victim may have had a gun in his right pocket, Green shot at the victim using a .25 caliber chrome automatic firearm at least four times, striking him twice. The final gunshot to strike the victim, fired by Green to the back of the victim's head from approximately two feet away, was fatal. Green further stated that following the fatal shot, he fled the scene on foot and threw the murder weapon in the woods. Green agreed to help the detectives locate the weapon. It was later retrieved —consistent with Green's version of events—in the woods where Green claimed to have thrown it while fleeing.

{¶10} Sometime after Green had given his oral and written statement, and unbeknownst to him, his parents arrived with an attorney retained to represent him. Police refused to allow both the parents and the attorney to have access to Green, as he had already waived his rights and had not requested an attorney at any time during the interrogation.

{¶11} Green was indicted on one count of aggravated murder with a firearm specification (R.C. 2903.01(A) and 2941.145) on September 9, 2000. On October 5, 2000, Green entered a plea of not guilty at his arraignment on the indictment. Between that time and his change of plea in 2002, Green's defense counsel filed motions challenging Green's competency to stand trial, requesting recusal of the judge, and to suppress all illegally obtained evidence during the investigation into

>the murder, including statements Green made to detectives on August 28, 2000.
>
>{¶12} The motion to suppress was filed on October 12, 2000, and was supplemented on May 7, 2001. A hearing on the motion was held on January 11, 2002. On January 18, 2002, the trial court issued its findings of fact and conclusions of law overruling the motion. Considering the totality of the circumstances of the interrogation, the court found that Green knowingly, intelligently, and voluntarily waived his Miranda rights. The court further found that the presence of Green's parents and an attorney on his behalf were irrelevant because of his valid waiver of rights.
>
>{¶13} That same day, Green appeared with counsel and entered a plea of guilty to an amended indictment charging him with one count of murder with a firearm specification (R.C. 2903.02 and 2941.145). He was sentenced to 15 years to life for the murder and 3 years for the firearm specification, to run prior to and consecutively. This sentence was subject to time served from August 28, 2000. Green did not appeal the sentence, nor did he challenge the ruling on the motion to suppress.
>
>{¶14} After serving nearly eighteen years of his prison sentence, Green filed a motion to withdraw his guilty plea on May 16, 2018, which the state opposed. The trial court denied the motion on June 14, 2018 without a hearing. No findings of fact or conclusions of law were issued.

*State v. Green*, 2019-Ohio-1303, 2019 WL 1518081 (Ohio Ct. App. Apr. 8, 2019).[4]

## II. Procedural History

**A. Conviction**

During its September 2000 term, a Trumbull County Grand Jury issued a one count indictment charging Green, a sixteen-year-old juvenile, with aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A)&(F) (1)(b), along with a firearm specification. (R. 6-2, PageID# 71-72; Exh. 1).

---

[4] The state appellate court specifically noted that it had not considered the transcript from the suppression hearing or an affidavit from Green, as these were not made part of the record by appellate counsel whose duty it was to order and provide a transcript. *Green*, 2019-Ohio-1303 at ¶¶2-4.

4

On October 5, 2000, Green, represented by counsel, entered a plea of not guilty. (R. 6-2, PageID# 73; Exh. 2). On January 18, 2002, Green withdrew his not guilty plea, and, with the representation of counsel, entered a plea of guilty to an amended indictment charging him with one count of murder in violation of O.R.C. § 2903.02, along with a firearm specification. (R. 6-2, PageID# 74-77; Exh. 3). The plea specifically stated that "Defendant is eligible for parole at the expiration of his minimum term, pursuant to section 2967.13(A)(1)." *Id*. at PageID# 75.

On January 18, 2002, the trial court held a sentencing hearing. (R. 6-2, PageID# 78-79; Exh. 4). The court imposed a sentence of 15 years to life for the murder conviction, with an additional mandatory and consecutive 3-year term for the firearm specification, for an aggregate sentence of 18 years to life in prison. *Id*. The court advised Green that he was not eligible for parole until the expiration of his minimum term, pursuant to O.R.C. § 2967.13(A)(1). *Id*.

**B. Direct Appeal**

Respondent represents that Green never filed a direct appeal. (R. 6, PageID# 48). Indeed, the docket provided does not document that an appeal was filed. (R. 6-2, PageID# 157; Exh. 14).

**C. Motion to Withdraw Guilty Plea**

Over sixteen years after pleading guilty, Petitioner, represented by counsel Engler, filed a Motion to Withdraw Guilty Plea with the state trial court on May 16, 2018. (R. 6-2, PageID# 80-81; Exh. 5). On the same date, Petitioner filed a memorandum in support arguing that a trilogy of decisions by the United States Supreme Court, decided between 2005 and 2012, cast doubt on the constitutional validity of Green's guilty plea. (R. 6-2, PageID# 82-97; Exh. 6). Those cases were identified as follows: *Roper v. Simmons*, 543 U.S. 551, 575 (2005) ("holding that the death penalty cannot be imposed upon juvenile offenders" under the Eighth and Fourteenth Amendments); *Graham v. Florida*, 560 U.S. 48 (2010) (holding that the Eighth Amendment

5

prohibits imposition of life without parole sentence on juvenile offender who did not commit homicide); and *Miller v. Alabama*, 567 U.S. 460 (2012) (holding that mandatory life imprisonment without parole for those under the age of eighteen at the time of their crimes violates the Eighth Amendment). *Id*. Finally, Green identified *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), which held that the Supreme Court's decision in *Miller v. Alabama* announced a new substantive constitutional rule that was retroactive on state collateral review. *Id*.

On June 14, 2018, the trial court denied the motion to withdraw the guilty plea in a judgment entry without opinion. (R. 6-2, PageID# 108; Exh. 8).

On July 16, 2020, Green, represented by counsel, filed a notice of appeal with the state appellate court. (R. 6-2, PageID# 160; Exh. 15). In his appellate brief, Green argued the trial court erred in denying the motion to withdraw guilty plea, positing the following issues for review:

1. Did the trial court err in not holding a hearing on defendant-appellant's motion to vacate his guilty plea?

2. Did the trial court err in not providing findings of fact and conclusions of law to explain the basis of its decision to deny defendant-appellant's motion to vacate his guilty plea?

3. Do the trilogy of United States Supreme Court cases decided during the period from 2005 through 2012 and made retroactive bear directly upon the validity of defendant-appellant's motion to vacate his guilty plea?

4. Has the defendant-appellant shown that "manifest injustice" occurred in this case?

5. Did the trial court abuse its discretion in not granting defendant-appellant's motion to vacate his guilty plea in light of the obvious "manifest injustice" shown by defendant-appellant?

6. Did Warren police detectives Bansky and Hoolihan violate defendant-appellant's constitutional rights?

    7.        Did Warren police detectives Bansky and Hoolihan unconstitutionally deny defendant-appellant access to his parents?

    8.        Did Warren police detectives Bansky and Hoolihan unconstitutionally deny defendant-appellant access to counsel?

    9.        Was the threat of a sentence of life without parole unconstitutional?

(R. 8-2, PageID# 195).

On April 8, 2019, the state appellate court affirmed the denial of the motion to withdraw Green's guilty plea. (R. 6-2, PageID# 109-123; Exh. 9). The relevant portions of the decision state as follows:

> {¶22} "A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus, citing Crim.R. 32.1. "Generally, a self-serving affidavit or statement is insufficient to demonstrate manifest injustice." *State v. Gibson*, 11th Dist. Portage No. 2007-P-0021, 2007-Ohio-6926, ¶ 33 (citations omitted). The motion "is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Smith*, *supra*, at paragraph two of the syllabus. Such a motion is allowable only in extraordinary circumstances. *Id*. at 264.
>
> {¶23} "An appellate court will review the trial court's determination of the Crim.R. 32.1 motion for an abuse of discretion." *State v. Desellems*, 11th Dist. Lake No. 98-L-053, 1999 WL 753996, *3 (Feb. 12, 1999) (citation omitted). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Dean*, 11th Dist. Trumbull No. 2015-T-0136, 2016-Ohio-8422, ¶ 11, citing *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed. 2004).
>
> {¶24} Likewise, "the decision on whether or not a court is to hold a hearing on a defendant's Crim.R. 32.1 motion to withdraw a plea is reviewed to determine whether the trial court committed an abuse of discretion." *State v. Alexander*, 8th Dist. Cuyahoga No. 72028, 1998 WL 72491, *3 (Feb. 19, 1998), citing *Smith*, *supra*, at paragraph two of the syllabus.
>
> {¶25} "While a trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of a guilty plea if the request is made before sentencing, the same is not true if the request is made after the trial court has already sentenced the defendant." *Gibson*, *supra*, at ¶32, quoting *State v.*

7

*Wilkey*, 5th Dist. Muskingum No. CT2005-0050, 2006-Ohio-3276, ¶ 25, citing *State v. Xie*, 62 Ohio St. 3d 521 (1994), paragraph one of the syllabus. "In those situations where the trial court must consider a post-sentence motion to withdraw a guilty plea, a hearing is only required if the facts alleged by the defendant, and accepted as true, would require withdrawal of the plea." *Id*. "An evidentiary hearing on a post-sentence motion to withdraw a guilty plea 'is not required if the facts as alleged by the defendant, and accepted as true by the court, would not require that the guilty plea be withdrawn.'" *Id*. at ¶33, quoting *State v. Patterson*, 5th Dist. Stark No. 2003CA00135, 2004-Ohio-1569, ¶ 18 (citation omitted).

{¶26} Under these circumstances, we find that Green's motion has not demonstrated the "manifest injustice" necessary to allow withdrawal of his guilty plea under Crim.R. 32.1. He has presented no supporting affidavits, documentary evidence, files, or other evidence in support of the motion to withdraw his guilty plea from 2002. The records exist just as they did at the determination of the suppression motion on January 18, 2002, which the trial court denied after setting forth findings of fact and conclusions of law as to Green's interrogation and valid waiver of *Miranda* rights. Green solely relies on inapposite and factually dissimilar case law that he argues "articulated a sentencing philosophy for the treatment of juvenile offenders who are charged and tried as adults" and demonstrates "evolving standards" for treating juvenile offenders that should be retroactively imposed here. Under these circumstances, Green has not set forth sufficient operative facts to establish substantive grounds for relief. The trial court did not abuse its discretion in failing to hold a hearing on the matter or in denying the motion.

\* \* \*

{¶31} In the case sub judice, the motion filed by Green bore the caption "Motion to withdraw guilty plea" and referenced Crim.R 32.1 in both the original motion and all briefing regarding the issue. Further, the request is one to withdraw a plea after a sentence has been imposed—which is properly brought under Crim. R. 32.1—and not to void or alter a judgment. Finally, Green's arguments for withdrawing the guilty plea are rooted in the "manifest injustice" legal standard, which is language taken directly from Crim.R. 32.1. Therefore, the trial court could clearly overrule the motion without issuing findings of fact and conclusions of law.

\* \* \*

{¶35} Throughout the issues raised in his brief and reply brief, Green argues that the constitutional issues regarding interrogations and charging of juveniles did not exist prior to a "trilogy of cases" decided by the United States Supreme Court since the time of his plea. He contends these cases establish "a philosophy of

8

dealing with juvenile offenders" that is applicable to the determination of voluntariness of his oral, written, and videotaped confessions on August 28, 2000. In addition, he contends they have an impact on what level of punishment was constitutionally available to the state.

{¶36} In fact, all three Supreme Court cases in the "trilogy" are regarding treatment of juveniles for sentencing purposes. None of them have any bearing on interrogations of juveniles or whether juvenile confessions are deemed valid. *Roper v. Simmons*, 543 U.S. 551 (2005), syllabus ("The Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed."); *Graham v. Florida*, 560 U.S. 48, 82 (2010) ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide."); *Miller v. Alabama*, 567 U.S. 460, 489 (2012) ("*Graham*, *Roper*, and our individualized *sentencing decisions* make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles.") (emphasis added).

{¶37} Because these Supreme Court cases are inapposite, the interrogation issues were already properly heard by the trial court and decided after the hearing on the suppression motion, from which the trial court issued findings of fact and conclusions of law. "During a hearing on a motion to suppress evidence, the trial judge acts as the trier of fact and, as such, is in the best position to resolve factual questions and assess the credibility of witnesses." *State v. Lett*, 11th Dist. Trumbull No. 2008-T-0116, 2009-Ohio-2796, ¶ 13, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "An appellate court reviewing a motion to suppress is bound to accept the trial court's findings of fact where they are supported by competent, credible evidence." *Id*.

{¶38} Under Ohio law, as it stands presently and in 2000, a juvenile may voluntarily make a confession in the absence of his parents where he or she knowingly, intelligently, and voluntarily waives *Miranda* rights. *See, e.g., In re Watson*, 47 Ohio St.3d 86, 89-90 (1989); *State v. Stewart*, 176 Ohio St. 156, 159-160 (1964); *State v. Bell*, 48 Ohio St. 2d 270, 276-277 (1976), r*ev'd on other grounds, sub nom. Bell v. Ohio*, 438 U.S. 637 (1978).

{¶39} It is important to note that there was no direct appeal taken after Green's plea and conviction. As such, in addition to the other reasons stated herein, many of his claims would be barred by res judicata. *See, e.g., State v. Gegia*, 11th Dist. Portage No. 2003-P-0026, 2004-Ohio-1441, ¶ 24; *State v. Cale*, 11th Dist. Lake No. 2000-L-034, 2001 WL 285794, *3 (Mar. 23, 2001).

{¶40} Furthermore, there is no evidence in the record of the alleged threat by a prosecutor of a life sentence without the possibility for parole. Green references an affidavit that was appended to the motion to withdraw his plea; however,

9

> that affidavit is not present in the record or on the docket for this case. We thus have nothing to review and—just as with the missing transcript discussed above—have no choice but to presume the validity and regularity of the trial court's proceedings, deferring to the court's determination following the hearing on the motion to suppress as valid. *See Bolden*, *supra*, at ¶ 61; *State v. Locke*, 11th Dist. Lake No.2014-L-053, 2015-Ohio-1067, ¶ 90, quoting *Knapp*, *supra*, at 199.
>
> {¶41} Green's sole assignment of error is without merit with regard to all issues raised. There is nothing in the record to suggest that the trial court's ruling on Green's confession was improper or in error. As such, in view of a valid confession that he did, in fact, commit the offense in question, Green has not established the existence of a "manifest injustice" that would support withdrawal of his guilty plea.

*Green*, 2019-Ohio-1303 at ¶¶ 22-41.

On May 31, 2019, Green, through counsel, filed a notice of appeal with the Supreme Court of Ohio. (R. 6-2, PageID# 164; Exh. 15). His memorandum in support of jurisdiction raised largely the same argument based on the previously identified Supreme Court cases. (R. 6-2, PageID# 126-134; Exh. 12). On August 6, 2019, the Ohio Supreme Court declined to accept jurisdiction pursuant to Ohio S.Ct.Prac.R. 7.08(B)(4). (R. 6-2, PageID# 150; Exh. 13).

**D. Federal Habeas Petition**

On March 13, 2020, Green, through counsel, filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> **GROUND ONE**: Retroactive changes in law relating to juveniles charged as adults did not benefit petitioner.
>
> *Supporting Facts*: The manner in which petitioner was interrogated and the circumstances leading to petitioner's guilty plea would not have been permitted under the principles established by a series of Supreme Court decisions made after petitioner was sentenced. The Supreme Court ordered that those changes be applied retroactively.
>
> **GROUND TWO**: The Warren Police Department denied petitioner access to an attorney during his interrogation.
>
> *Supporting Facts*: While petitioner, then a juvenile, was being interrogated by the

10

> Warren Police Department an attorney retained by petitioner's family arrived at the police station. Stating that petitioner had not himself specifically requested an attorney, the interrogators refused to permit the attorney on premises to have access to petitioner.

(R. 1, PageID# 5, 7).

### III. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); *Watkins v. Warden*, No. 17-1388, 2017 WL 4857576 at *1 (6th Cir. Sept. 28, 2017) ("Actions arising under § 2254 have a one-year statute of limitations.") The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

11

**A. One-Year Limitation After Conclusion of Direct Review**

In the instant action, Respondent asserts that Green's petition is time-barred, because he did not file within AEDPA's one-year limitations period. (R. 6, PageID# 53-66). Petitioner's sentencing hearing occurred on January 18, 2002, and the journal entry bears a January 30, 2002 time-stamp. (R. 6-2, PageID# 78-79; Exh. 4).

As indicated above, "a state prisoner ordinarily has one year to file a federal petition for habeas corpus, starting from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *McQuiggin v. Perkins*, 569 U.S. 383, 388, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013) (quoting 28 U.S.C. § (d)(1)A)). It is undisputed that Green never filed a direct appeal, and that his first state court filing—the motion to vacate guilty plea filed on May 16, 2018—was not filed until over *sixteen years after* his time to seek direct review expired. Therefore, it is clear that under 28 U.S.C. § 2244(d)(1)(A), the petition is untimely and subject to dismissal. However, the court's inquiry does not end here.

**B. U.S. Supreme Court's Recognition of a Constitutional Right Made Retroactive[5]**

Pursuant to 28 U.S.C. § 2244(d)(1)(C), the statute of limitations may commence on a later date, resulting in a filing deadline one year from "the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Green relies upon section 2244(d)(1)(C) to assert that he timely filed his petition. (R. 8, PageID# 172-173). Green asserts his "habeas corpus claim arose on the date

---

[5] Petitioner has not alleged any state-created impediment to filing a timely federal habeas application, nor has he asserted that the factual predicate of the claim or claims presented could not have been discovered through the exercise of due diligence.

12

on which the United States Supreme Court decreed that the principles enunciated in *Roper*, *Graham*, and *Miller* … should be applied retroactively," which would be the date the Supreme Court decided *Montgomery v. Louisiana*—January 25, 2016. *Id*. at PageID# 173.

Respondent disagrees that Green can justify a later start date based on § 2244(d)(1)(C). (R. 6, PageID# 54). Respondent argues that the trilogy of cases upon which Green relies is inapposite, as none involve the alleged unlawful pre-conviction interrogation of a juvenile or the alleged denial of counsel to a juvenile. *Id* at PageID# 55. Respondent accurately points out that the none of the three cases render holdings directly applicable to Green, as he was not the subject of a death sentence unconstitutionally imposed on a juvenile (*Roper*); he was not sentenced to life without parole for a non-homicide offense (*Graham*); and he was not sentenced to a mandatory life imprisonment *without* parole (*Miller*). As the court understands Green's argument, he asserts that the State or the police threatened him with a life sentence without the possibility of parole—a sentence that is now constitutionally prohibited—and, therefore, his subsequent guilty plea, ostensibly made only to avoid such a sentence, is also unconstitutional.[6]

Green's opposition brief suggests the Respondent's discussion of "the underlying merits of his petition do not relate to timeliness or are proper subjects for a motion to dismiss based solely on the petition." (R. 8, PageID# 177). The court disagrees. Green has suggested that the aforementioned Supreme Court cases justify a later start date with respect to AEDPA's statute of limitations. While Green clearly believes that the trilogy of cases impact his guilty plea, he has identified no case law addressing that issue; and neither the Respondent nor this court are

---

[6] The state appellate court had observed that "there is no evidence in the record of the alleged threat by a prosecutor of a life sentence without the possibility for parole. Green references an affidavit that was appended to the motion to withdraw his plea; however, that affidavit is not present in the record or on the docket for this case." *Green*, 2019-Ohio-1303 at ¶40.

13

obligated to accept his interpretation or litigation position. Indeed, whether a later start date for the statute of limitations is even appropriate, could well be dispositive of the issue of whether the petition was timely filed. But in this case, the petition remains untimely even if the one year statute of limitations start date is moved further out under section 2244(d)(1)(C).

First, the court disagrees that January 25, 2016—the date the Supreme Court decided *Montgomery v. Louisiana*—is the appropriate start date under § 2244(d)(1)(C). Rather, this court is bound by the Sixth Circuit's decisions, which have rejected the position that a habeas petition, based on the rule announced in the *Miller* decision, does not begin to run until *Montgomery* was decided.

> The district court next concluded that Taylor's *Miller* claim (claim 4) was untimely under § 2244(d)(1)(C) and reasonable jurists would not debate the correctness of this ruling. Under this subsection, a state prisoner must file his habeas petition within one year of "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." The Supreme Court decided *Miller* on June 25, 2012. ***The § 2244(d)(1)(C) statute of limitations started on that date even though the Supreme Court did not make Miller retroactively applicable to cases on collateral review until it issued its decision in Montgomery v. Louisiana***, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016). *See Dodd v. United States*, 545 U.S. 353, 358-60, 125 S. Ct. 2478, 162 L. Ed. 2d 343 (2005). The statute of limitations applying to Taylor's *Miller* claim thus expired in June 2013, well before he filed his habeas petition in the district court. And as before, Taylor's subsequent efforts to obtain post-conviction relief in the state courts did not revive the statute of limitations. *See Vroman*, 346 F.3d at 602.

*Taylor v. Winn*, 2020 WL 4334125, 2020 U.S. App. LEXIS 21770, at *4-5 (6th Cir. Jul. 13, 2020) (emphasis added). Thus, Green's statute of limitations, assuming the trilogy of cases are found applicable, would commence on June 25, 2012—the date *Miller* was decided. As Green did not file anything in state court until nearly six years had elapsed, his petition would be

14

untimely even with that later start date.[7] In addition, even if Green were correct and January 25, 2016—the date *Montgomery* was decided—was the appropriate start date under § 2244(d)(1)(C), over two years and three months elapsed before May 16, 2018, the date Green filed the motion to withdraw his guilty plea in state court. Neither that filing nor the appeals taken therefrom can revive a statute of limitations that had already expired.

Even accepting Green's argument that § 2244(d)(1)(C) applies, the habeas statute of limitations had elapsed well before he filed the petition in this court. Therefore, unless equitable tolling is appropriate, Green's petition should be dismissed as time-barred.

**C. Equitable Tolling**

"The federal courts sparingly bestow equitable tolling. Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.... Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000) (citations omitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1)

---

[7] Although AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending[]' § 2244(d)(2)[]" *Evans v. Chavis*, 546 U.S. 189, 191, 126 S. Ct. 846, 163 L. Ed. 2d 684 (2006); *Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003), Green's motion to withdraw his guilty plea, filed on May 16, 2018, cannot toll the statute of limitations, which had already long expired. State post-conviction filings, even if timely, cannot serve to toll a statute of limitations that has already expired. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation omitted).

15

that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Green asserts that the statue of limitations should be equitably tolled until October 10, 2017. (R. 8, PageID# 176). He offers the following justifications for the additional amount of tolling: (1) Green's principal means of discovering the *Montgomery* decision was the prison library, and it is unknown exactly when that ruling appeared in the prison library;[8] (2) Green has a low IQ based on the affidavit of his sibling;[9] and, Green's family, acting on his behalf, needed time to become aware of the *Montgomery* decision, raise money to cover legal fees, and seek out a lawyer. (R. 8, PageID# 173-176).

The court is skeptical whether Petitioner has justified the use of equitable tolling. Nevertheless, Petitioner asserts that his family contacted his current counsel on July 18, 2017; counsel represents that he performed some preliminary legal research before agreeing to represent Green, and that the attorney/client relationship was formalized on October 10, 2017— the date Green asks this court to start the statute of limitations. (R. 8, PageID# 176). The petition remains untimely, however, even utilizing the date specifically requested by Petitioner to begin the running of the statute of limitations.

From October 10, 2017 until May 16, 2018, the date Green filed his motion to withdraw his guilty plea, 218 days elapsed by Petitioner's own calculation. (R. 8, PageID# 176). Assuming

---

[8] If the facility where Green was housed offers access to online legal search services, presumably the decision would have become available nearly instantly.

[9] Respondent takes issue with this assertion, noting that Green's younger brother "does not purport to be any type of medical or psychological expert, and his bias as a family member cannot provide anything credible for this Court's consideration." (R. 10, PageID# 223, citing *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (family members' testimony is generally not credible in that they have a personal stake in exonerating their relative)).

all of Green's state court petitions and ensuing appeals were properly and timely filed, the statute of limitations would have tolled until August 6, 2019—the date the Ohio Supreme Court denied jurisdiction over the appeal. Green contends that the statute of limitations did not resume at that point, but was tolled for another 90 days during which Green could have filed a petition for a writ of certiorari. (R. 8, PageID# 177, citing *Abela v. Martin*, 348 F.3d 164, 172 (6th Cir. 2003) (holding that "the statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until the conclusion of the time for seeking Supreme Court review of the state's final judgment on that application independent of whether the petitioner actually petitions the Supreme Court to review the case.")).

Unfortunately for Green, his reliance on *Abela* is misplaced, as it "was later overruled by *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007)." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 753 (6th Cir. 2011). The *Lawrence* decision unambiguously held that the tolling provisions of § 2244(d)(2) for post-conviction and collateral proceedings do not toll the 1–year limitations period during the pendency of a *certiorari* petition before the Supreme Court. *See also Parsons v. Turner*, No. 3:12-CV-02300, 2014 WL 197781, at *4 (N.D. Ohio Jan. 14, 2014) (applying *Lawrence* and finding AEDPA's statute of limitations resumed running one day after the Ohio Supreme Court dismissed the appeal from a state collateral proceeding).

Here too, the statute of limitations resumed running on August 7, 2019, the day after the Supreme Court of Ohio declined jurisdiction over the appeal from the denial of Green's motion to withdraw his guilty plea. Another 219 days elapsed before Green filed the present habeas petition. Adding this total to the 218 days that had already run, a total of 437 days of untolled time had run between October 10, 2017—the beginning of the statute of limitations based on

17

Green's tolling request, and the filing of his habeas petition. Expressed in other terms, Green's petition was filed 72 days late, even with the benefit of the equitable tolling that he asked for. To the extent Green would ask this court to equitably toll the statute of limitations yet again to atone for the miscalculation, the Sixth Circuit has recently rejected the propriety of tolling under similar circumstances.

> Lane's one-year limitations period began to run on June 8, 2017, when the Kentucky Supreme Court denied review of his post-conviction appeal, and ran uninterrupted until its expiration one year later on June 7, 2018. Because Lane's habeas corpus petition was filed after June 7, 2018, his petition is time-barred.
>
> In his application for a certificate of appealability, Lane argues that he is entitled to equitable tolling for the four months that his habeas corpus petition was late— between June 7, 2018, when the statute of limitations expired, and October 23, 2018, when his habeas corpus petition is considered filed—because retained post-conviction counsel, Michael Goodwin, *erroneously advised him that the statute of limitations was tolled while he pursued a petition for certiorari following the denial of post-conviction relief.* But Goodwin's alleged erroneous advice does not support equitable tolling here. "Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." *Lawrence*, 549 U.S. at 336-37; *see also Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (reiterating that "a petitioner's reliance on the unreasonable and incorrect advice of his or her attorney is not a ground for equitable tolling").

*Lane v. Green*, No. 19-6351, 2020 U.S. App. LEXIS 17392, at *5-6 (6th Cir. June 2, 2020)

(emphasis added).

Therefore, the court recommends dismissing the petition as time-barred, as it untimely even with the added benefit of equitable tolling as requested by Green.

**D. Actual Innocence**

In *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013), the United States Supreme Court held that actual innocence, if proved, may overcome the expiration of AEDPA's one-year statute of limitations. The Supreme Court noted that a claim

of actual innocence is *not a request for equitable tolling* but, rather, a request for an equitable exception to § 2244(d)(1). *Id.* at 1931 (emphasis added). The *McQuiggin* court also reiterated the requisite standard for a credible claim of actual innocence. *Id.* at 1931. The touchstone of the inquiry is whether a petitioner's "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [him].'" *Id.* at 1933 (*quoting Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). However, "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 133 S.Ct. at 1928. In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 298.

In the instant case, Green has not asserted that he is actually innocent of the homicide to which he pleaded guilty, nor has he identified any new, reliable evidence demonstrative of actual innocence.

## IV. Conclusion

For the foregoing reasons, it is recommended that Respondent's motion to dismiss (R. 6) be GRANTED and that this matter be DISMISSED as time barred.

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE

Date: March 5, 2021

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within**

**the specified time may forfeit the right to appeal the District Court's order.** *See Berkshire v. Beauvais,* **928 F.3d 520, 530-31 (6th Cir. 2019).**